IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Never Slip Holdings, Inc., *et al.*,[1] | Case No. 24-10663 (LSS) |
| Debtors. | (Jointly Administered) |

## PROOF OF PUBLICATION

Attached hereto as Exhibit A and Exhibit B are the Proofs of Publication for the *Notice of Proposed Sale of Assets, Stalking Horse APA, Bidding Procedures, Auction, and Sale Hearing* as follows:

| Publication | Publication Date | Exhibit |
|---|---|---|
| USA Today | May 7, 2024 | Exhibit A |
| The Wilmington News Journal | May 8, 2024 | Exhibit B |

/s/ Randy Lowry
Randy Lowry
Omni Agent Solutions, Inc.
5955 DeSoto Avenue, Suite 100
Woodland Hills, California 91367
(818) 906-8300
*Claims, Noticing, and Administrative Agent for the Debtors*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Never Slip Holdings, Inc. (5010); Never Slip TopCo, Inc. (8956); SHO Holding I Corporation (7699); SHO Holding II Corporation (7738); Shoes For Crews, Inc. (9679); SFC Holdings, Inc. (8908); SFC Holdings, LLC (2357); Shoes for Crews, LLC (2362); SRS/MKS, L.L.C. (7003); Shoes for Crews Canada, Ltd. (0085); SFC Canada, Inc. (1314); and Sunrise Enterprises, LLC (4516). The Debtors' service address is 5000 T-Rex Avenue, Suite 100, Boca Raton, FL 33431.

# **EXHIBIT A**



## VERIFICATION OF PUBLICATION

**COMMONWEALTH OF VIRGINIA**
**COUNTY OF FAIRFAX**

Being duly sworn, Vanessa Salvo says that she is the principal clerk of USA TODAY, and is duly authorized by USA TODAY to make this affidavit, and is fully acquainted with the facts stated herein: on **Tuesday, May 7, 2024**, the following legal advertisement – **Never Slip Holdings, Inc.** was published in the national edition of **USA TODAY.**

*Vanessa Salvo*
Principal Clerk of USA TODAY
May 7, 2024

# 12 best burns* from the Tom Brady roast

Jim Reineking
USA TODAY

"The Greatest Roast of All Time: The Roast of Tom Brady," part of the annual "Netflix is a Joke Festival," took place Sunday at the Kia Forum in Inglewood, California, and aired live.

The seven-time Super Bowl champion quarterback was the key figure getting roasted. However, Brady's former head coach Bill Belichick and New England Patriots teammates also took their licks during the program.

Drew Bledsoe, Randy Moss, Rob Gronkowski, Julian Edelman, Rodney Harrison, Willie McGinest, Matt Light and Nate Solder were among Brady's former Patriots teammates in attendance. Patriots owner Robert Kraft and former head coach Bill Belichick also were present and took to the microphone to deliver messages to the to-be first-ballot Hall of Fame quarterback.

The 12 best burns* (*that are safe to print in a family publication) from the "GROAT" on Netflix:

**Julian Edelman, Patriots WR (2009-20)**

"Leonardo DiCaprio's ex-girlfriend's ex-husband." – In one of a number of jokes referring to Brady's ex-wife, fashion model Gisele Bündchen.

**Tom Brady attended his own roast at the Kia Forum in Inglewood, California.**
ELYSE JANKOWSKI/FILMMAGIC

"Alex (Guerrero) is the snake oil salesman who turned Tom into a big (expletive) weirdo." – On Brady's "body coach" and business partner, who was in attendance.

**Rob Gronkowski, Patriots TE (2010-18), Buccaneers TE (2020-21)**

"Let's talk about my designated driver, Tom Brady. We played together for 11 years and I barely know this guy."

**Drew Bledsoe, Patriots QB (1993-2001)**

"Can you please stay (expletive) retired? We're sick of this (expletive)." – Speaking for most NFL fans.

**Nikki Glaser, comedian**

"Drew, I'm going to move on from you just like your team did after you almost died."

**Randy Moss, Patriots WR (2007-10)**

"I'll tell you what you deflated: my legacy. I want my ring. ... Drew Bledsoe was in the freakin' hospital, and he has a Super Bowl ring. Nate Ebner – who the (expletive) is Nate Ebner? – he has three Super Bowl rings." – On not being part of Brady's six title teams in New England.

**Bill Belichick, Patriots head coach (2000-23)**

"I rescued a dog from a shelter and rescued Randy (Moss) from the Raiders. Sorry you didn't get a ring. Not sorry enough to give you one of mine." – Referring to the 2007 trade that sent Moss from AFC West doormat Oakland to title-contending New England.

"Ron Burgundy ... the only member of the media I respect."

"Not so easy running a team, is it Tom? Stick to American football." – Referring to the English soccer team Birmingham City, which was relegated to a lower league in Brady's first year as part-owner.

**Will Ferrell, actor**

"I never liked you, Tom. In all my years of watching football, I never saw a more boring quarterback; the master of the 6-yard slant. Randy (Moss), he was never going to get you that ring. ... Tom is the master of the checkdown. You were just a sexy decoy." – In character as Ron Burgundy, who also called Brady "a dead robot of a quarterback."

**Peyton Manning, Colts QB (1998-2010), Broncos QB (2012-15)**

"My (golf) handicap is a 6.4. Tom's handicap is blowing leads to my brother Eli in the Super Bowl." – Also referred to Brady as a "three-time Super Bowl loser." Brady did get in the last word, however, saying, "Peyton, sometimes you live in Denver, sometimes you live in Louisiana, but you'll always live in my shadow."

**Robert Kraft, Patriots owner**

"Vladimir Putin, if you're watching, give me my (expletive) ring back." – Kraft has long said that the president of Russia stole his Super Bowl 39 championship ring.

# Roast's big awkward (and telling) moment

Mike Freeman
Columnist
USA TODAY

## To Tom Brady, most of the jokes on the night were legit – except one

The roast of Tom Brady happened Sunday night and it was as funny, offensive and foul as many of us expected. It was a roast. This is what happens. They are not for the easily offended.

But out of all the moments from the night, from all of the tawdry jokes and one-liners, there was one moment that was extremely telling. It said a lot about the relationship between Brady and someone he's extremely close to: Patriots owner Robert Kraft.

"The Greatest Roast of All Time: The Roast of Tom Brady" was part of the annual "Netflix is a Joke" festival. It aired live on the site, and as someone who is a roast geek, it was one of the better ones you'll see. Everyone caught strays. Poor Rob Gronkowski was absolutely brutalized.

There were a number of former Brady teammates, coaches and others in attendance including Bill Belichick, Peyton Manning, Randy Moss, Drew Bledsoe, Julian Edelman, Rodney Harrison, Willie McGinest, Matt Light and Nate Solder.

Out of all the moments in the show it was one involving Kraft that was the most interesting.

Comedian Jeff Ross would be on the Mount Rushmore of offensive roast comedians. At roasts in general, no one is untouchable. To Ross, the more uncomfortable he makes people, the better. He started off one of his jokes by telling the story of how Brady, at the time a rookie, and a sixth-round pick, had the audacity to tell Kraft that drafting him was the best decision the organization had ever made.

Ross then joked that Brady added, "Would you like a massage?"

Oh. Man.

The joke was referring to Kraft's 2019 arrest for soliciting prostitution at a massage parlor – charges that were dropped in 2020.

After the joke, Brady immediately stood, approached Ross at the lectern, and said, "Don't say that (expletive) again." His remark was caught on the microphone and could clearly be heard by the home audience.

It's possible this was part of the act and Brady was acting. Maybe that will be what Brady says at some point. But it didn't seem that way. It looked like Brady wasn't joking. He seemed deadly serious.

Ross then said, "OK, OK." Ross next pointed to Kraft in the audience: "He's having fun, look at him."

Brady looked unmoved.

There's a simple reason why Brady was irritated. While Brady and Belichick's relationship has been at times frayed, Brady and Kraft have been close for decades. They have remained good friends and that description might be understanding the true nature of how close they are.

As the Patriots won Super Bowls, and then fractured, Brady and Kraft stayed close. At every opportunity, Kraft has publicly supported Brady, and recently, Brady did the same. Last year, when Kraft was up for the Hall of Fame, Brady publicly jumped in to support him.

"In my mind, this is a no-brainer," Brady said of Kraft's candidacy. "I want this bad for him because he deserves it."

"When it comes to the league, nobody, in my opinion, has contributed – since I've been in the league – the way he has," Brady said. "As an owner on all the important committees, he successfully navigated multiple labor agreements. I know in the 2011 agreement, he was instrumental in the success of it.

"I remember that picture of him and Jeff Saturday, with their arms around each other, bringing everyone back to football, which was great. You can care about that on a team level, but you can also look at that from a league level."

To Brady, you don't mess with Kraft. You can take all the shots you want at Belichick or Gronk. Jokes were made about Aaron Hernandez being a murderer and a bevy of a number of other tasteless quips.

Brady even made fun of himself.

"The NFL spent $20 million and found it was 'more probable than not' that I was 'generally aware' that someone may have deflated my footballs," Brady said. "You could have just given me the $20 million and I would just told you I (expletive) did it."

Most of the jokes on the night were funny and inappropriate and even terrible. To Brady, all these were legit. There seemed to be only one exception.

Don't mess with Kraft.

MARKETPLACE TODAY

For advertising information: 1.800.397.0070 www.russelljohns.com/usat

## NOTICES

### LEGAL NOTICE

**UNITED STATES BANKRUPTCY COURT, DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br>Never Slip Holdings, Inc., *et al.*,[1]<br>Debtors. | Chapter 11<br>Case No. 24-10663 (LSS)<br>(Jointly Administered)<br>**Re: Docket Nos. 70, 132** |

**NOTICE OF PROPOSED SALE OF ASSETS, STALKING HORSE APA, BIDDING PROCEDURES, AUCTION, AND SALE HEARING**

PLEASE TAKE NOTICE that the above-captioned debtors and debtors-in-possession (the "Debtors") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), on April 1, 2024, in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). The Debtors are seeking to sell (the "Sale") all or substantially all of their assets (the "Assets"), free and clear of all Liens other than Assumed Liabilities (each as defined in the Stalking Horse APA, as defined below).[2] In connection with the Sale, the Debtors have entered into an asset purchase agreement dated as of April 8, 2024 (the "Stalking Horse APA") with to SFC Acquisition Co., LLC, an entity organized by the Prepetition First Lien Agent and to be controlled by the Prepetition First Lien Lenders, subject to the Debtors' acceptance of higher or otherwise better offers in accordance with the Bidding Procedures (as defined below).

***Summary of Key Dates Established by Bidding Procedures***

| Date | Event or Deadline |
|---|---|
| April 30, 2024, or as soon as reasonably practicable thereafter | Deadline to serve Sale Notice on the Notice Parties |
| May 17, 2024, 5:00 p.m. (E.T.) | Deadline for Prospective Bidders to Submit Qualifying Bids |
| May 20, 2024, 4:00 p.m. (E.T.) | Sale Objection Deadline |
| May 21, 2024, 11:00 a.m. (E.T.) | Auction Date |
| May 22, 2024, or as soon as reasonably practicable thereafter | Deadline to file Notice of Successful Bidder |
| May 22, 2024, 12:00 p.m. (E.T.) | Cure Objection Deadline |
| May 23, 2024, 2:30 p.m. (E.T.) | Alternative Sale Objection Deadline |
| May 23, 2024, 2:30 p.m. (E.T.) | Hearing to Consider the Sale Order |
| No later than May 31, 2024 | Entry of the Sale Order |
| No later than June 17, 2024 | Consummation of the Sale |

PLEASE TAKE FURTHER NOTICE that by order, dated April 26, 2024 [Docket No. 132] (the "Bidding Procedures Order"), the Bankruptcy Court approved certain relief requested in the related motion [Docket No. 70] (the "Bidding Procedures Motion"), and certain "Bidding Procedures" that govern the sale of the Assets to the highest or otherwise best bidders. Copies of the Bidding Procedures Motion, the Bidding Procedures Order, the Bidding Procedures and the Stalking Horse APA are available for download at https://omniagentsolutions.com/ShoesforCrews (the "Case Website") or from the Debtors' claims and noticing agent, Omni Agent Solutions, via telephone at 888-202-5659 (US & Canada toll free) and 747-288-6384 (International) or via email at ShoesforCrewsInquiries@OmniAgnt.com. A separate notice will be provided to counterparties to executory contracts and unexpired leases with the Debtors that may be assumed and assigned in connection with the Sale. **Any interested bidder should contact the Debtors' proposed investment banking advisor, Solomon Partners Securities, LLC, attn: Jeff Derman (212-508-1625; jeff.derman@solomonpartners.com), Tero Jänne (212-508-1676; tero.janne@solomonpartners.com), and Dan Golynskiy (646-378-4068; daniel.golynskiy@solomonpartners.com)**.

PLEASE TAKE FURTHER NOTICE that the deadline to submit a bid for any Assets is **May 17, 2024, at 5:00 p.m. (E.T.)**.

PLEASE TAKE FURTHER NOTICE that an auction for the Assets, unless cancelled or adjourned in accordance with the Bidding Procedures Order, will be held on **May 21, 2024 at 11:00 a.m. (E.T.)**, at the offices of Ropes & Gray LLP, 1211 6th Avenue, New York, NY 10036, or virtually via telephone and/or video conference pursuant to information to be timely provided by the Debtors to the Auction Participants.

PLEASE TAKE FURTHER NOTICE that unless adjourned in accordance with the Bidding Procedures Order, the Bankruptcy Court will conduct a hearing (the "Sale Hearing") to consider the Sale on **May 23, 2024 at 2:30 p.m. (E.T.)**, subject to the Bankruptcy Court's availability.

PLEASE TAKE FURTHER NOTICE that any objections to the Sale or the relief requested in connection with the Sale, including any objection to the sale of any Purchased Assets free and clear of liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code, the identity of the Stalking Horse Purchaser, or the adequate assurance of future performance by the Stalking Horse Purchaser but not including objections related to cure amounts for the Purchased Contracts or general objections to the assumption and assignment of the Purchased Contracts (each, a "Sale Objection"), must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) set forth the specific basis for the Sale Objection; (d) be filed with the Clerk of this Court, 824 N. Market Street, 3rd Floor, Wilmington, Delaware 19801 (the "Clerk"), and proof of service of such Sale Objection upon the Objection Notice Parties (as defined below) shall be filed with the Court as and when required by the Local Rules; and (e) be served upon the Objection Notice Parties. Sale Objections must be filed with the Clerk **on or before 4:00 p.m. (E.T.) on May 20, 2024** (the "Sale Objection Deadline").

PLEASE TAKE FURTHER NOTICE that any Sale Objections or objections to relief requested in connection with the conduct of the Auction, the identify of a Successful Bidder that is not the Stalking Horse Purchaser, the Sale to a Successful Bidder that is not the Stalking Horse Purchaser, as applicable, must be filed with the Clerk **on or before 2:30 p.m. (E.T.) on May 23, 2024** (the "Alternative Sale Objection Deadline"); provided that any objections to the adequate assurance of future performance by a Successful Bidder that is not the Stalking Horse Purchaser need not be written and filed and may be raised at the Sale Hearing.

PLEASE TAKE FURTHER NOTICE that any Assignment Objections, (a) in the event the Stalking Horse Purchaser is the Successful Bidder, must be filed with the Clerk by the Sale Objection Deadline and, (b) in the event the Successful Bidder is not the Stalking Horse Purchaser, need not be written and filed and may be raised at the Sale Hearing.

The "Objection Notice Parties" are as follows: (a) proposed co-counsel to the Debtors, Ropes & Gray LLP, 1211 Avenue of the Americas, New York, NY 10036 (Attn: Gregg M. Galardi, Cristine Pirro Schwarzman, and Ellen Wheeler; email: gregg.galardi@ropesgray.com, cristine.schwarzman@ropesgray.com, and ellen.wheeler@ropesgray.com); Ropes & Gray LLP, 191 North Wacker Drive, 32nd Floor, Chicago, IL 60606 (Attn: Conor P. McNamara, email: conor.mcnamara@ropesgray.com); and Chipman Brown Cicero & Cole, LLP (Attn: Mark L. Desgrosseilliers; email: desgross@chipmanbrown.com); (b) the U.S. Trustee, 844 N. King Street, Room 2207, Wilmington, Delaware 19801 (Attn: Linda Casey and Fang Bu, email: Linda.Casey@usdoj.gov and Fang.Bu@usdoj.gov); (c) counsel to Antares Capital LP, as DIP Agent and the Prepetition Initial First Lien Agent, King & Spalding LLP (Attn: Lindsey Henrikson and Matthew Warren, email: lhenrikson@kslaw.com and mwarren@kslaw.com); and (d) counsel for any statutory committee appointed in these chapter 11 cases.

**PLEASE TAKE FURTHER NOTICE THAT FAILURE TO ABIDE BY THE BIDDING PROCEDURES, THE BIDDING PROCEDURES ORDER OR ANY OTHER APPLICABLE ORDER OF THE COURT ENTERED IN THESE CHAPTER 11 CASES MAY RESULT IN THE REJECTION OF YOUR BID AND YOUR DISQUALIFICATION FROM PARTICIPATING IN THE BIDDING FOR AND AUCTION OF ANY OF THE DEBTORS' ASSETS.**

**PLEASE TAKE FURTHER NOTICE THAT IF A SALE OBJECTION IS NOT FILED AND SERVED ON OR BEFORE THE APPLICABLE SALE OBJECTION DEADLINE IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER, THE OBJECTING PARTY MAY BE BARRED FROM OBJECTING TO THE SALE AND BEING HEARD AT THE SALE HEARING, AND THE BANKRUPTCY COURT MAY ENTER THE SALE ORDER WITHOUT FURTHER NOTICE TO SUCH PARTY.**

**PLEASE TAKE FURTHER NOTICE THAT SECTION 10.18 OF THE STALKING HORSE APA INCLUDES THE FOLLOWING RELEASES:**

**(a) Effective as of the Closing and subject to entry of the Sale Order (with any discrepancy between the release provided in the Sale Order and this Agreement being controlled by this Agreement), each of the Sellers on their own behalf and on behalf of their past, present, and future predecessors, successors and assigns hereby unconditionally, irrevocably, and fully forever release, remise, acquit, relinquish, irrevocably waive, and discharge, in their capacity as purchaser of the Purchased Assets, the Buyer, the Administrative Agents and the Lenders, and each of their predecessors, successors, assigns, Subsidiaries and Affiliates, and each of their respective former, current or future, direct or indirect, equity holders, officers, employees, directors, agents, advisory board members, representatives, owners, members, partners, employees, management companies, direct and indirect parent entities, "controlling persons" (within the meaning of federal securities law), heirs, administrators and executors, financial advisors, legal advisors, shareholders, managers, principals, consultants, accountants, attorneys, actuaries, investment bankers and other professionals in each case acting in such capacity whether current or former, including in their capacity as directors of the Company, as applicable (collectively, the "Buyer Released Persons"), of and from any and all Claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, accounts, defenses, offsets, powers, privileges, licenses, Liens, indemnities, guaranties, franchises, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, foreseen or unforeseen, accrued, unaccrued, fixed, contingent, liquidated or unliquidated, secured or unsecured, direct or derivative, matured or unmatured, pending, or threatened, including all legal and equitable theories of recovery, arising under common law, statute, or regulation or by contract or otherwise, including any derivative claims asserted or assertable on behalf of any of the Sellers, each Sellers Released Persons and Buyer Released Persons, of every nature and description that exist on the date hereof or that such Person would have been legally entitled to assert (whether individually or collectively) with respect to, based on or relating to, or in any manner arising from, in whole or in part, the Sellers, Acquired Entities or the Business (including the capital structure, management, ownership or operation thereof), the business operations of the Sellers and the Acquired Entities, actions taken by the Sellers' boards of directors, the purchase, sale or rescission of any security of the Sellers, the subject matter of the business or contractual arrangements between or among any of the Sellers Released Persons or Buyer Released Persons, the Sellers' restructuring efforts, the ownership or operation of the Sellers by any Sellers Released Persons, the distribution of any cash or other property of the Sellers to any Sellers Released Persons or Buyer Released Persons, the assertion of enforcement of rights or remedies against the Sellers, the Sellers' in- or out-of-court restructuring efforts, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to claims asserted against the Sellers), intercompany transactions, the restructuring transactions and the Transactions, entry into the Bankruptcy Cases, the formulation, preparation, dissemination, negotiation, entry into, or filing of, as applicable, any term sheets, any restructuring support agreement, the DIP Documents, this Agreement, the Transaction Documents or any other documents relating to any of the foregoing created or entered into in connection with the Transaction, this Agreement or the DIP Documents, or any other act or omission, transaction, agreement, conduct, circumstance, event or other occurrence with respect to the foregoing occurring or taking place on or prior to the Closing; provided that nothing herein shall release the Buyer of its obligations under this Agreement, the Sale Order and the other Transaction Documents, or otherwise constitute a release by Seller or any of its Affiliates of any claims that Seller or any of its Affiliates have in the Bankruptcy Cases. Nothing in this Section 10.18(a) shall limit Sellers' or their respective Affiliates' rights in the case of Actual Fraud (but not, for the avoidance of doubt, fraudulent conveyance claims). Effective as of the Closing and subject to entry of the Sale Order (with any discrepancy between the release provided in the Sale Order and this Agreement being controlled by this Agreement), each of the Sellers on their own behalf and on behalf of their past, present, and future predecessors, successors and assigns, covenants not to sue Buyer, the Administrative Agents or any Buyer Released Person, or to instigate, initiate, or pursue against any of them, in any manner of judicial or administrative proceeding on such Seller's own behalf or on behalf of any of the Sellers Released Persons, or any other Person, regarding or in connection with any of the claims released pursuant to this Section 10.18(a).**

**(b) Effective as of the Closing, each of the Buyer and the Administrative Agents, on its own behalf and on behalf of its past, present, and future Affiliates (including the Lenders), predecessors, successors and assigns hereby unconditionally, irrevocably, and fully forever release, remise, acquit, relinquish, irrevocably waive, and discharge, the Sellers and each of their predecessors, successors, assigns, Subsidiaries and Affiliates, and each of their respective former, current or future, direct or indirect, equity holders, officers, employees, directors, agents, advisory board members, representatives, owners, members, partners, employees, management companies, direct and indirect parent entities, "controlling persons" (within the meaning of federal securities law), heirs, administrators and executors, financial advisors, legal advisors, shareholders, managers, principals, consultants, accountants, attorneys, actuaries, investment bankers and other professionals in each case acting in such capacity whether current or former, including in their capacity as directors of the Company, as applicable (collectively, the "Sellers Released Persons"), of and from any and all Claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, accounts, defenses, offsets, powers, privileges, licenses, Liens, indemnities, guaranties, franchises, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, foreseen or unforeseen, accrued, unaccrued, fixed, contingent, liquidated or unliquidated, secured or unsecured, direct or derivative, matured or unmatured, pending, or threatened, including all legal and equitable theories of recovery, arising under common law, statute, or regulation or by contract or otherwise, including any derivative claims asserted or assertable on behalf of any of the Sellers, each Sellers Released Persons and Buyer Released Persons, of every nature and description that exist on the date hereof or that such Person would have been legally entitled to assert (whether individually or collectively) with respect to, based on or relating to, or in any manner arising from, in whole or in part, the Sellers, Acquired Entities or the Business (including the capital structure, management, ownership or operation thereof), the business operations of the Sellers and the Acquired Entities, actions taken by the Sellers' boards of directors, the purchase, sale or rescission of any security of the Sellers, the subject matter of, the business or contractual arrangements between or among any Sellers Released Persons or Buyer Released Persons, the Sellers' restructuring efforts, the ownership or operation of the Sellers by any Sellers Released Persons, the distribution of any cash or other property of the Sellers to any Sellers Released Persons or Buyer Released Persons, the assertion of enforcement of rights or remedies against the Sellers, the Sellers' in- or out-of-court restructuring efforts, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to claims asserted against the Sellers), intercompany transactions, the restructuring transactions and the Transactions, entry into the Bankruptcy Cases, the formulation, preparation, dissemination, negotiation, entry into, or filing of, as applicable, any term sheets, any restructuring support agreement, the DIP Documents, this Agreement, the Transaction Documents or any other documents relating to any of the foregoing created or entered into in connection with the Transaction, this Agreement or the DIP Documents, or any other act or omission, transaction, agreement, conduct, circumstance, event or other occurrence with respect to the foregoing occurring or taking place on or prior to the Closing; provided that nothing herein shall release the Sellers of their obligations under this Agreement, the Sale Order, and the other Transaction Documents. Nothing in this Section 10.18(b) shall limit Buyer's rights in the case of Actual Fraud (but not, for the avoidance of doubt, fraudulent conveyance claims). Effective as of the Closing, each of the Buyer and the Administrative Agents, on its own behalf and on behalf of its past, present, and future Affiliates (including the Lenders), predecessors, successors and assigns, covenants not to sue any Seller or any Sellers Released Person, or to instigate, initiate, or pursue against any of them, in any manner of judicial or administrative proceeding on such Buyer's or Administrative Agent's own behalf or on behalf of any of the Buyer Released Persons, or any other Person, regarding or in connection with any of the claims released pursuant to this Section 10.18(b).**

**(c) Without limiting in any way the scope of the releases contained in this Section 10.18 and effective upon the Closing, each of Seller, Buyer and the Administrative Agents, to the fullest extent allowed under applicable Law, hereby waives and relinquishes all statutory and common law protections purporting to limit the scope or effect of a general release, whether due to lack of knowledge of any claim or otherwise, including, waiving and relinquishing the terms of any Law which provides that a release may not apply to material unknown Claims. Each of Seller, Buyer and the Administrative Agents hereby affirms its intent to waive and relinquish such unknown Claims and to waive and relinquish any statutory or common law protection available in any applicable jurisdiction with respect thereto. Each of Seller, Buyer and the Administrative Agents hereby represents and warrants that it has access to adequate information regarding the terms hereof, the scope and effect of the releases in this Section 10.18, and all other matters encompassed by this Agreement to make an informed and knowledgeable decision with regard to entering into this Agreement.**

Dated: April 30, 2024, Wilmington, Delaware, **CHIPMAN BROWN CICERO & COLE, LLP,** */s/ Mark L. Desgrosseilliers*, Mark L. Desgrosseilliers (No. 4083), Hercules Plaza, 1313 North Market Street, Suite 5400, Wilmington, Delaware 19801, Telephone: (302) 295-0192, Email: desgross@chipmanbrown.com -and- **ROPES & GRAY LLP,** Gregg M. Galardi (No. 2991), Cristine Pirro Schwarzman (admitted *pro hac vice*), 1211 Avenue of the Americas, New York, New York 10036, Telephone: (212) 596-9000, Facsimile: (212) 596-9090, E-mail: gregg.galardi@ropesgray.com, cristine.schwarzman@ropesgray.com -and- **ROPES & GRAY LLP,** Conor P. McNamara (admitted *pro hac vice*), 191 North Wacker Drive, 32nd Floor, Chicago, Illinois 60606, Telephone: (312) 845-1200, Facsimile: (312) 845-5500, E-mail: conor.mcnamara@ropesgray.com, *Proposed Counsel to the Debtors and Debtors in Possession*

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Never Slip Holdings, Inc. (5010); Never Slip TopCo, Inc. (8956); SHO Holding I Corporation (7699); SHO Holding II Corporation (7738); Shoes For Crews, Inc. (9679); SFC Holdings, Inc. (8908); SFC Holdings, LLC (2357); Shoes for Crews, LLC (2362); SRS/MKS, L.L.C. (7003); Shoes for Crews Canada, Ltd. (0085); SFC Canada, Inc. (1314); and Sunrise Enterprises, LLC (4516). The Debtors' service address is 5000 T-Rex Avenue, Suite 100, Boca Raton, FL 33431.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Bidding Procedures Order and Bidding Procedures (each as defined below).

ONE CALL DOES IT ALL!
Advertise in USA TODAY's Marketplace!
To Advertise, Call: 1-800-397-0070

# **<u>EXHIBIT B</u>**



**LocaliQ**
DELAWARE
GANNETT

PO Box 631699 Cincinnati, OH 45263-1699

## AFFIDAVIT OF PUBLICATION

STATE OF DELAWARE, COUNTY OF NEW CASTLE

The Wilmington News Journal is a daily newspaper of general circulation, printed and published in the State of Delaware; that the publication, a copy of which is attached hereto, was published in the said newspaper in the issues dated:

05/08/2024

Sworn to and subscribed before on 05/08/2024

_____
Legal Clerk

_____
Notary, State of WI, County of Brown

9/19/25

_____
My commission expires

| Order No: | 10150809 | # of Copies: |
| Customer No: | 901766 | 0 |
| PO #: | R5030002 | |

### THIS IS NOT AN INVOICE!

*Please do not use this form for payment remittance.*

```
VICKY FELTY
Notary Public
State of Wisconsin
```

Page 1 of 2

**UNITED STATES BANKRUPTCY COURT, DISTRICT OF DELAWARE**

In re: Never Slip Holdings, Inc., *et al.*,[1] Debtors.

Chapter 11
Case No. 24-10663 (LSS)
(Jointly Administered)
**Re: Docket Nos. 70, 132**

### NOTICE OF PROPOSED SALE OF ASSETS, STALKING HORSE APA, BIDDING PROCEDURES, AUCTION, AND SALE HEARING

PLEASE TAKE NOTICE that the above-captioned debtors and debtors-in-possession (the "Debtors") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C §§ 101-1532 (the "Bankruptcy Code"), on April 1, 2024, in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). The Debtors are seeking to sell (the "Sale") all or substantially all of their assets (the "Assets"), free and clear of all Liens other than Assumed Liabilities (each as defined in the Stalking Horse APA, as defined below).[2] In connection with the Sale, the Debtors have entered into an asset purchase agreement dated as of April 8, 2024 (the "Stalking Horse APA") with SFC Acquisition Co., LLC, an entity organized by the Prepetition First Lien Agent and to be controlled by the Prepetition First Lien Lenders, subject to the Debtors' acceptance of higher or otherwise better offers in accordance with the Bidding Procedures (as defined below).

#### Summary of Key Dates Established by Bidding Procedures

| Date | Event or Deadline |
|---|---|
| April 30, 2024, or as soon as reasonably practicable thereafter | Deadline to serve Sale Notice on the Notice Parties |
| May 17, 2024, 5:00 p.m. (E.T.) | Deadline for Prospective Bidders to Submit Qualifying Bids |
| May 20, 2024, 4:00 p.m. (E.T.) | Sale Objection Deadline |
| May 21, 2024, 11:00 a.m. (E.T.) | Auction Date |
| May 22, 2024, or as soon as reasonably practicable thereafter | Deadline to file Notice of Successful Bidder |
| May 22, 2024, 12:00 p.m. (E.T.) | Cure Objection Deadline |
| May 23, 2024, 2:30 p.m. (E.T.) | Alternative Sale Objection Deadline |
| May 23, 2024, 2:30 p.m. (E.T.) | Hearing to Consider the Sale Order |
| No later than May 31, 2024 | Entry of the Sale Order |
| No later than June 17, 2024 | Consummation of the Sale |

PLEASE TAKE FURTHER NOTICE that by order, dated April 26, 2024 [Docket No. 132] (the "Bidding Procedures Order"), the Bankruptcy Court approved certain relief requested in the related motion [Docket No. 70] (the "Bidding Procedures Motion"), and certain "Bidding Procedures" that govern the sale of the Assets to the highest or otherwise best bidders. Copies of the Bidding Procedures Motion, the Bidding Procedures Order, the Bidding Procedures and the Stalking Horse APA are available for download at https://omniagentsolutions.com/ShoesforCrews (the "Case Website") or from the Debtors' claims and noticing agent, Omni Agent Solutions, via telephone at 888-202-5659 (US & Canada toll free) and 747-288-6384 (International) or via email at ShoesforCrewsInquiries@OmniAgnt.com. A separate notice will be provided to counterparties to executory contracts and unexpired leases with the Debtors that may be assumed and assigned in connection with the Sale. **Any interested bidder should contact the Debtors' proposed investment banking advisor, Solomon Partners Securities, LLC, attn: Jeff Derman (212-508-1625; jeff.derman@solomonpartners.com), Tero Jänne (212-508-1676; tero.janne@solomonpartners.com), and Dan Golynskiy (646-378-4068; daniel.golynskiy@solomonpartners.com).**

PLEASE TAKE FURTHER NOTICE that the deadline to submit a bid for any Assets is **May 17, 2024, at 5:00 p.m. (E.T.)**.

PLEASE TAKE FURTHER NOTICE that an auction for the Assets, unless cancelled or adjourned in accordance with the Bidding Procedures Order, will be held on **May 21, 2024 at 11:00 a.m. (E.T.)**, at the offices of Ropes & Gray LLP, 1211 6th Avenue, New York, NY 10036, or virtually via telephone and/or video conference pursuant to information to be timely provided by the Debtors to the Auction Participants.

PLEASE TAKE FURTHER NOTICE that unless adjourned in accordance with the Bidding Procedures Order, the Bankruptcy Court will conduct a hearing (the "Sale Hearing") to consider the Sale on **May 23, 2024 at 2:30 p.m. (E.T.)**, subject to the Bankruptcy Court's availability.

PLEASE TAKE FURTHER NOTICE that any objections to the Sale or the relief requested in connection with the Sale, including any objection to the sale of any Purchased Assets free and clear of liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code, the identity of the Stalking Horse Purchaser, or the adequate assurance of future performance by the Stalking Horse Purchaser but not including objections related to cure amounts for the Purchased Contracts or general objections to the assumption and assignment of the Purchased Contracts (each, a "Sale Objection"), must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) set forth the specific basis for the Sale Objection; (d) be filed with the Clerk of this Court, 824 N. Market Street, 3rd Floor, Wilmington, Delaware 19801 (the "Clerk"), and proof of service of such Sale Objection upon the Objection Notice Parties (as defined below) shall be filed with the Court as and when required by the Local Rules; and (e) be served upon the Objection Notice Parties. Sale Objections must be filed with the Clerk **on or before 4:00 p.m. (E.T.) on May 20, 2024** (the "Sale Objection Deadline").

PLEASE TAKE FURTHER NOTICE that any Sale Objections or objections to relief requested in connection with the conduct of the Auction, the identify of a Successful Bidder that is not the Stalking Horse Purchaser, the Sale to a Successful Bidder that is not the Stalking Horse Purchaser, as applicable, must be filed with the Clerk **on or before 2:30 p.m. (E.T.) on May 23, 2024** (the "Alternative Sale Objection Deadline"); provided that any objections to the adequate assurance of future performance by a Successful Bidder that is not the Stalking Horse Purchaser need not be written and filed and may be raised at the Sale Hearing.

PLEASE TAKE FURTHER NOTICE that any Assignment Objections, (a) in the event the Stalking Horse Purchaser is the Successful Bidder, must be filed with the Clerk by the Sale Objection Deadline and, (b) in the event the Successful Bidder is not the Stalking Horse Purchaser, need not be written and filed and may be raised at the Sale Hearing.

The "Objection Notice Parties" are as follows: (a) proposed co-counsel to the Debtors, Ropes & Gray LLP, 1211 Avenue of the Americas, New York, NY 10036 (Attn: Gregg M. Galardi, Cristine Pirro Schwarzman, and Ellen Wheeler; email: gregg.galardi@ropesgray.com, cristine.schwarzman@ropesgray.com, and ellen.wheeler@ropesgray.com); Ropes & Gray LLP, 191 North Wacker Drive, 32nd Floor, Chicago, IL 60606 (Attn: Conor P. McNamara, email: conor.mcnamara@ropesgray.com); and Chipman Brown Cicero & Cole, LLP (Attn: Mark L. Desgrosseilliers; email: desgross@chipmanbrown.com); (b) the U.S. Trustee, 844 N. King Street, Room 2207, Wilmington, Delaware 19801 (Attn: Linda Casey and Fang Bu, email: Linda.Casey@usdoj.gov and Fang.Bu@usdoj.gov); (c) counsel to Antares Capital LP, as DIP Agent and the Prepetition Initial First Lien Agent, King & Spalding LLP (Attn: Lindsey Henrikson and Matthew Warren, email: lhenrikson@kslaw.com and mwarren@kslaw.com); and (d) counsel for any statutory committee appointed in these chapter 11 cases.

PLEASE TAKE FURTHER NOTICE THAT FAILURE TO ABIDE BY THE BIDDING PROCEDURES, THE BIDDING PROCEDURES ORDER OR ANY OTHER APPLICABLE ORDER OF THE COURT ENTERED IN THESE CHAPTER 11 CASES MAY RESULT IN THE REJECTION OF YOUR BID AND YOUR DISQUALIFICATION FROM PARTICIPATING IN THE BIDDING FOR AND AUCTION OF ANY OF THE DEBTORS' ASSETS.

PLEASE TAKE FURTHER NOTICE THAT IF A SALE OBJECTION IS NOT FILED AND SERVED ON OR BEFORE THE APPLICABLE SALE OBJECTION DEADLINE IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER, THE OBJECTING PARTY MAY BE BARRED FROM OBJECTING TO THE SALE AND BEING HEARD AT THE SALE HEARING, AND THE BANKRUPTCY COURT MAY ENTER THE SALE ORDER WITHOUT FURTHER NOTICE TO SUCH PARTY.

PLEASE TAKE FURTHER NOTICE THAT SECTION 10.18 OF THE STALKING HORSE APA INCLUDES THE FOLLOWING RELEASES:

(a) Effective as of the Closing and subject to entry of the Sale Order (with any discrepancy between the release provided in the Sale Order and this Agreement being controlled by this Agreement), each of the Sellers on their own behalf and on behalf of their past, present, and future predecessors, successors and assigns hereby unconditionally, irrevocably, and fully forever release, remise, acquit, relinquish, irrevocably waive, and discharge, in their capacity as purchaser of the Purchased Assets, the Buyer, the Administrative Agents and the Lenders, and each of their predecessors, successors, assigns, Subsidiaries and Affiliates, and each of their respective former, current or future, direct or indirect, equity holders, officers, employees, directors, agents, advisory board members, representatives, owners, members, partners, employees, management companies, direct and indirect parent entities, "controlling persons" (within the meaning of federal securities law), heirs, administrators and executors, financial advisors, legal advisors, shareholders, managers, principals, consultants, accountants, attorneys, actuaries, investment bankers and other professionals in each case acting in such capacity whether current or former, including in their capacity as directors of the Company, as applicable (collectively, the "Buyer Released Persons"), of and from any and all Claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, accounts, defenses, offsets, powers, privileges, licenses, Liens, indemnities, guaranties, franchises, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, foreseen or unforeseen, accrued, unaccrued, fixed, contingent, liquidated or unliquidated, secured or unsecured, direct or derivative, matured or unmatured, pending, or threatened, including all legal and equitable theories of recovery, arising under common law, statute, or regulation or by contract or otherwise, including any derivative claims asserted or assertable on behalf of any of the Sellers, each Sellers Released Persons and Buyer Released Persons, of every nature and description that exist on the date hereof or that such Person would have been legally entitled to assert (whether individually or collectively) with respect to, based on or relating to, or in any manner arising from, in whole or in part, the Sellers, Acquired Entities or the Business (including the capital structure, management, ownership or operation thereof), the business operations of the Sellers and the Acquired Entities, actions taken by the Sellers' boards of directors, the purchase, sale or rescission of any security of the Sellers, the subject matter of the business or contractual arrangements between or among any of the Sellers Released Persons or Buyer Released Persons, the Sellers' restructuring efforts, the ownership or operation of the Sellers by any Sellers Released Persons, the distribution of any cash or other property of the Sellers to any Sellers Released Persons or Buyer Released Persons, the assertion of enforcement of rights or remedies against the Sellers, the Sellers' in- or out-of-court restructuring efforts, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to claims asserted against the Sellers), intercompany transactions, the restructuring transactions and the Transactions, entry into the Bankruptcy Cases, the formulation, preparation, dissemination, negotiation, entry into, or filing of, as applicable, any term sheets, any restructuring support agreement, the DIP Documents, this Agreement, the Transaction Documents or any other documents relating to any of the foregoing created or entered into in connection with the Transaction, this Agreement or the DIP Documents, or any other act or omission, transaction, agreement, conduct, circumstance, event or other occurrence with respect to the foregoing occurring or taking place on or prior to the Closing; provided that nothing herein shall release the Buyer of its obligations under this Agreement, the Sale Order and the other Transaction Documents, or otherwise constitute a release by Seller or any of its Affiliates of any claims that Seller or any of its Affiliates have in the Bankruptcy Cases. Nothing in this Section 10.18(a) shall limit Sellers' or their respective Affiliates' rights in the case of Actual Fraud (but not, for the avoidance of doubt, fraudulent conveyance claims). Effective as of the Closing and subject to entry of the Sale Order (with any discrepancy between the release provided in the Sale Order and this Agreement being controlled by this Agreement), each of the Sellers on their own behalf and on behalf of their past, present, and future predecessors, successors and assigns, covenants not to sue Buyer, the Administrative Agents or any Buyer Released Person, or to instigate, initiate, or pursue against any of them, in any manner of judicial or administrative proceeding on such Seller's own behalf or on behalf of any of the Sellers Released Persons, or any other Person, regarding or in connection with any of the claims released pursuant to this Section 10.18(a).

(b) Effective as of the Closing, each of the Buyer and the Administrative Agents, on its own behalf and on behalf of its past, present, and future Affiliates (including the Lenders), predecessors, successors and assigns hereby unconditionally, irrevocably, and fully forever release, remise, acquit, relinquish, irrevocably waive, and discharge, the Sellers and each of their predecessors, successors, assigns, Subsidiaries and Affiliates, and each of their respective former, current or future, direct or indirect, equity holders, officers, employees, directors, agents, advisory board members, representatives, owners, members, partners, employees, management companies, direct and indirect parent entities, "controlling persons" (within the meaning of federal securities law), heirs, administrators and executors, financial advisors, legal advisors, shareholders, managers, principals, consultants, accountants, attorneys, actuaries, investment bankers and other professionals in each case acting in such capacity whether current or former, including in their capacity as directors of the Company, as applicable (collectively, the "Sellers Released Persons"), of and from any and all Claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, accounts, defenses, offsets, powers, privileges, licenses, Liens, indemnities, guaranties, franchises, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, foreseen or unforeseen, accrued, unaccrued, fixed, contingent, liquidated or unliquidated, secured or unsecured, direct or derivative, matured or unmatured, pending, or threatened, including all legal and equitable theories of recovery, arising under common law, statute, or regulation or by contract or otherwise, including any derivative claims asserted or assertable on behalf of any of the Sellers, each Sellers Released Persons and Buyer Released Persons, of every nature and description that exist on the date hereof or that such Person would have been legally entitled to assert (whether individually or collectively) with respect to, based on or relating to, or in any manner arising from, in whole or in part, the Sellers, Acquired Entities or the Business (including the capital structure, management, ownership or operation thereof), the business operations of the Sellers and the Acquired Entities, actions taken by the Sellers' boards of directors, the purchase, sale or rescission of any security of the Sellers, the subject matter of the business, or contractual arrangements between or among any Sellers Released Persons or Buyer Released Persons, the Sellers' restructuring efforts, the ownership or operation of the Sellers by any Sellers Released Persons, the distribution of any cash or other property of the Sellers to any Sellers Released Persons or Buyer Released Persons, the assertion of enforcement of rights or remedies against the Sellers, the Sellers' in- or out-of-court restructuring efforts, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to claims asserted against the Sellers), intercompany transactions, the restructuring transactions and the Transactions, entry into the Bankruptcy Cases, the formulation, preparation, dissemination, negotiation, entry into, or filing of, as applicable, any term sheets, any restructuring support agreement, the DIP Documents, this Agreement, the Transaction Documents or any other documents relating to any of the foregoing created or entered into in connection with the Transaction, this Agreement or the DIP Documents, or any other act or omission, transaction, agreement, conduct, circumstance, event or other occurrence with respect to the foregoing occurring or taking place on or prior to the Closing; *provided* that nothing herein shall release the Sellers of their obligations under this Agreement, the Sale Order, and the other Transaction Documents. Nothing in this Section 10.18(b) shall limit Buyer's rights in the case of Actual Fraud (but not, for the avoidance of doubt, fraudulent conveyance claims). Effective as of the Closing, each of the Buyer and the Administrative Agents, on its own behalf and on behalf of its past, present, and future Affiliates (including the Lenders), predecessors, successors and assigns, covenants not to sue any Seller or any Sellers Released Person, or to instigate, initiate, or pursue against any of them, in any manner of judicial or administrative proceeding on such Buyer's or Administrative Agent's own behalf or on behalf of any of the Buyer Released Persons, or any other Person, regarding or in connection with any of the claims released pursuant to this Section 10.18(b).

(c) Without limiting in any way the scope of the releases contained in this Section 10.18 and effective upon the Closing, each of Seller, Buyer and the Administrative Agents, to the fullest extent allowed under applicable Law, hereby waives and relinquishes all statutory and common law protections purporting to limit the scope or effect of a general release, whether due to lack of knowledge of any claim or otherwise, including, waiving and relinquishing the terms of any Law which provides that a release may not apply to material unknown Claims. Each of Seller, Buyer and the Administrative Agents hereby affirms its intent to waive and relinquish such unknown Claims and to waive and relinquish any statutory or common law protection available in any applicable jurisdiction with respect thereto. Each of Seller, Buyer and the Administrative Agents hereby represents and warrants that it has access to adequate information regarding the terms hereof, the scope and effect of the releases in this Section 10.18, and all other matters encompassed by this Agreement to make an informed and knowledgeable decision with regard to entering into this Agreement.

Dated: April 30, 2024, Wilmington, Delaware, **CHIPMAN BROWN CICERO & COLE, LLP,** */s/ Mark L. Desgrosseilliers*, Mark L. Desgrosseilliers (No. 4083), Hercules Plaza, 1313 North Market Street, Suite 5400, Wilmington, Delaware 19801, Telephone: (302) 295-0192, Email: desgross@chipmanbrown.com -and- **ROPES & GRAY LLP,** Gregg M. Galardi (No. 2991), Cristine Pirro Schwarzman (admitted *pro hac vice*), 1211 Avenue of the Americas, New York, New York 10036, Telephone: (212) 596-9000, Facsimile: (212) 596-9090, E-mail: gregg.galardi@ropesgray.com, cristine.schwarzman@ropesgray.com -and- **ROPES & GRAY LLP,** Conor P. McNamara (admitted *pro hac vice*), 191 North Wacker Drive, 32nd Floor, Chicago, Illinois 60606, Telephone: (312) 845-1200, Facsimile: (312) 845-5500, E-mail: conor.mcnamara@ropesgray.com, *Proposed Counsel to the Debtors and Debtors in Possession*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Never Slip Holdings, Inc. (5010); Never Slip TopCo, Inc. (8956); SHO Holding I Corporation (7699); SHO Holding II Corporation (7738); Shoes For Crews, Inc. (9679); SFC Holdings, Inc. (8908); SFC Holdings, LLC (2357); Shoes for Crews, LLC (2362); SRS/MKS, L.L.C. (7003); Shoes for Crews Canada, Ltd. (0085); SFC Canada, Inc. (1314); and Sunrise Enterprises, LLC (4516). The Debtors' service address is 5000 T-Rex Avenue, Suite 100, Boca Raton, FL 33431.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Bidding Procedures Order and Bidding Procedures (each as defined below).

# Street

Continued from Page 1A

Councilperson Nathan Field, who sponsored the ordinance, said during the council meeting Thursday that when Wilmington negotiated a contract for the sale of the Gibraltar Mansion, there was a specific item carved out for the street bed at West 16th Street and Greenhill Avenue that valued that part of the sale at $350,000.

"If the city doesn't give (the street portion) to (the developers), the city would be forced to pay that money in cash – $350,000 as part of the sale price to Gibraltar."

In January, Wilmington officials struck a deal to purchase the 6-acre estate and historic property from Gibraltar Preservation Group for $900,000 thanks to an infusion of $1 million in state money approved by the General Assembly to help with the costs.

"We had a very reasonable agreement with the seller to obtain this beautiful and historic property for $900,000, which was a discounted price," Mayor Mike Purzycki said in an emailed statement. "We were close, but it slipped away. This ordinance received only two negative votes but was defeated because five council members were absent during this particular roll call. So, we'll pay what amounts to a penalty unless council can figure out a way to rectify it."

The agreement was made after plans for redeveloping the Gibraltar property and surrounding parcels were rejected by area residents.

But the plans for vacating a portion of West 16th Street have also frustrated neighbors who say it's still unclear what the developers' plans are for the parcels they own around the historic mansion — and why vacating the unused street is a necessary component in all this.

"We would respectfully request that you table this



**The Gibraltar mansion in Wilmington.**
JERRY HABRAKEN/DELAWARE NEWS JOURNAL

decision until the community has a chance to see the plan, complete with site renderings and engineering studies and traffic impact studies," said Maggie Mesinger, a West 16th Street resident who has lived in the Highlands for over 30 years.

### What's the plan?

Two parcels adjacent to the mansion owned by BDK Brinckle LLC – of which Cattermole is a principal – were later listed for sale in September.

At the time, 1600 Brinckle and 1601 Greenhill Ave. were listed on Patterson Schwartz Real Estate's website for $1.9 million and $825,000, respectively. They both later sold for less than asking – 1601 Greenhill Ave. selling for $610,000 and 1600 Brinckle selling for $1.45 million, according to the real estate website's listings.

While 1600 Brinckle appears to have been sold to individuals who now live in the single-family home, 1601 Greenhill was purchased by Grant Ave. Holding Co. LLC, a limited liability company that has no individuals as a registered agent, according to New Castle County parcel records and the Department of State LLC database.

City officials, who were first contacted before the City Council meeting Thursday, did not say what the developer's plans are for the portion of West 16th Street that would have been removed nor whether there are any other development plans in the works for the parcels adjacent to Gibraltar.

The agreement struck with the city also included turning over the unused, overgrown portion of West 16th Street between Brinckle and Greenhill avenues to developers.

### Redeveloping Gibraltar

There have been many proposals for adaptive reuse of the property pitched over the decades, but a lack of funding and community opposition often stalled progress.

A redevelopment plan proposed by the Gibraltar Preservation Group in 2021 would have turned the Gibraltar mansion into a boutique hotel, renovated the greenhouse and garage into restaurant and retail space, and built townhomes on vacant land surrounding the 6-acre property.

But that proposal was also rejected by neighbors, which led to the city taking ownership of the historic mansion earlier this year.

Field, who represents the Highlands neighborhood and worked with the mayor to ensure the community's wishes were taken into consideration, said Purzycki reassured him that there would be no "commercial development at all" on the Gibraltar estate.

"I put a lot of pressure on the mayor to guarantee to meet the concerns of the neighborhood, and he has assured me that 'the lot will not land in hands that the community will not support,'" the councilperson said.

*Got a tip? Contact Amanda Fries at afries@delawareonline.com. Follow her on X at @mandy_fries.*

---

# Daniels

Continued from Page 1A

Trump is charged with 34 counts of falsifying business records for allegedly trying to hide a $130,000 hush money payment to Daniels through his lawyer Michael Cohen. Trump denies having had sex with the adult film actor and has pleaded not guilty.

With Trump's son Eric looking on, Daniels unspooled a salacious and unflattering tale.

Daniels said she was 27 years old when she met the reality TV star, then 60, at a celebrity golf tournament in Lake Tahoe in July 2006.

At the tournament dinner, a Trump bodyguard named Keith approached Daniels, inviting her to meet the real estate mogul for dinner. Daniels went up to Trump's hotel suite for the meeting.

### 'What about your wife?'

Trump greeted Daniels wearing silky pajamas. She made a joke, asking if Hugh Hefner knew that Trump was wearing his clothes. She told Trump to go change and he obliged, she said, putting on a dress shirt and dress pants.

They made getting-to-know-you chit-chat, she said. Trump asked if she had a boyfriend; she didn't. He asked business questions about the adult film industry: Were there unions, was there testing for sexually transmitted diseases, how did she get paid. He asked if



**Stormy Daniels testified Tuesday about her sexual encounter with Donald Trump in the hush money trial against the former president.**
MARY ALTAFFER/POOL VIA REUTERS

she had ever tested positive for an STD; no, never, she told him.

She commented on a photo of Melania Trump that was in the suite: "She's very beautiful – what about your wife?" Trump told Daniels not to worry about that, that he and his wife didn't sleep in the same room, Daniels testified.

The light conversation continued. Trump, famously proud of his hair, told Daniels about a contest in which the loser would have to shave his head. "You do not have the head designed to be without hair," she responded. He agreed, and said all that stuff was predetermined and he knew it wouldn't happen to him.

Daniels said she grew annoyed by Trump's frequent interruptions and asked him, "Are you always this arrogant and pompous?" He dared her to spank him with a magazine, and she did.

"That's bullshit," Trump appeared to say as he watched from the defendant's table.

"He was much more polite after that," Daniels said. They discussed his golf course in Scotland and traveling, she said. Trump said he might be able to get her on "The Apprentice."

At this point, Judge Juan Merchan told the prosecution to limit the detail.

Daniels used the restroom, noticing Old Spice and gold tweezers. When she came out, Trump was on the bed posing in his underwear, she described. She said she thought, "Oh my God," and asked herself what she had misread.

She laughed nervously, she said, and at first tried to make a joke and step around to leave. She said she didn't feel physically threatened, although she knew there was a power imbalance and a bodyguard right outside.

Daniels said she "blacked out" despite consuming no drugs or alcohol, and woke up on the bed naked. She did not tell Trump to stop. "I didn't say anything at all," she said. "I was trying to think about anything other than what was happening there."

She made a reference to their sexual position and the defense objected, which the judge sustained. Asked by the prosecution whether Trump wore a condom, Daniels said no. As Daniels was readying to leave the suite, Trump said they were "fantastic together" and that she should be gotten onto his show.

Daniels said she later met Trump on other occasions and discussed "The Apprentice." At one point he made passes she declined, saying she had her period. Eventually, Daniels said, Trump told her he couldn't get her on the show. She didn't talk to him again, she said.

She decided to keep the incident private after being threatened in a parking lot in 2011 but changed her mind during Trump's 2016 presidential bid, when he faced multiple accusations of sexual misbehavior, she testified.

During the hush money negotiations, Daniels understood Cohen to be representing Trump. She said she cared some but not much about the dollar amount.

Two years later, The Wall Street Journal reported on the hush money payment and her life became "chaos," Daniels said.

### 'You hate President Trump'

After lunch, the defense demanded a mistrial, saying Daniels' testimony was unduly prejudicial.

Aside from "pure embarrassment," the only purpose of her comments was "to inflame this jury to not look at the evidence that matters," lawyer Todd Blanche said.

He was particularly furious that Daniels seemed to raise the possibility that the encounter was nonconsensual.

Such testimony is "impossible to come back from," Blanche said.

Merchan declined to grant the mistrial. Some things Daniels said would have been "better left unsaid," he said, but he noted that he sustained many of the defense's objections. "I was surprised" the defense didn't object more, the judge said.

Then the defense dove into cross-examination, grilling Daniels on inconsistencies in her story about the parking lot threat and generally questioning her motives.

"Am I correct that you hate President Trump?" Trump lawyer Susan Necheles asked.

"Yes," Daniels said.

"You've been making money by claiming to have had sex with President Trump for more than a decade, right?" Necheles asked.

Daniels responded that she's been making money by telling the story of what happened to her.

Necheles prodded again on the story making Daniels a lot of money.

"It has also cost me a lot of money," Daniels said. She clarified that Trump did not force her into sex.
*Contributing: Reuters.*

---

**UNITED STATES BANKRUPTCY COURT, DISTRICT OF DELAWARE**

In re: Never Slip Holdings, Inc., *et al.*,¹ Debtors.

Chapter 11
Case No. 24-10663 (LSS)
(Jointly Administered)
Re: Docket Nos. 70, 132

**NOTICE OF PROPOSED SALE OF ASSETS, STALKING HORSE APA, BIDDING PROCEDURES, AUCTION, AND SALE HEARING**

PLEASE TAKE NOTICE that the above-captioned debtors and debtors-in-possession (the "Debtors") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), on April 1, 2024, in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). The Debtors are seeking to sell (the "Sale") all or substantially all of their assets (the "Assets"), free and clear of all Liens other than Assumed Liabilities (each as defined in the Stalking Horse APA, as defined below).¹ In connection with the Sale, the Debtors have entered into an asset purchase agreement dated as of April 8, 2024 (the "Stalking Horse APA") with SFC Acquisition Co., LLC, an entity organized by the Prepetition First Lien Agent and to be controlled by the Prepetition First Lien Lenders, subject to the Debtors' acceptance of higher or otherwise better offers in accordance with the Bidding Procedures (as defined below).

**Summary of Key Dates Established by Bidding Procedures**

| Date | Event or Deadline |
|---|---|
| April 30, 2024, or as soon as reasonably practicable thereafter | Deadline to serve Sale Notice on the Notice Parties |
| May 17, 2024, 5:00 p.m. (E.T.) | Deadline for Prospective Bidders to Submit Qualifying Bids |
| May 20, 2024, 4:00 p.m. (E.T.) | Sale Objection Deadline |
| May 21, 2024, 11:00 a.m. (E.T.) | Auction Date |
| May 22, 2024, as soon as reasonably practicable thereafter | Deadline to file Notice of Successful Bidder |
| May 22, 2024, 12:00 p.m. (E.T.) | Cure Objection Deadline |
| May 23, 2024, 2:30 p.m. (E.T.) | Alternative Sale Objection Deadline |
| May 23, 2024, 2:30 p.m. (E.T.) | Hearing to Consider the Sale Order |
| No later than May 31, 2024 | Entry of the Sale Order |
| No later than June 17, 2024 | Consummation of the Sale |

PLEASE TAKE FURTHER NOTICE that by order, dated April 26, 2024 [Docket No. 132] (the "Bidding Procedures Order"), the Bankruptcy Court approved certain relief requested in the related motion [Docket No. 70] (the "Bidding Procedures Motion"), and certain "Bidding Procedures" that govern the sale of the Assets to the highest or otherwise best bidders. Copies of the Bidding Procedures Motion, the Bidding Procedures Order, the Bidding Procedures and the Stalking Horse APA are available for download at https://omniagentsolutions.com/ShoesforCrews (the "Case Website") or from the Debtors' claims and noticing agent, Omni Agent Solutions, via telephone at 888-202-5659 (US & Canada toll free) and 747-288-6384 (International) or via email at ShoesforCrewsInquiries@OmniAgnt.com. A separate notice will be provided to counterparties to executory contracts and unexpired leases with the Debtors that may be assumed and assigned in connection with the Sale. **Any interested bidder should contact the Debtors' proposed investment banking advisor, Solomon Partners Securities, LLC, attn: Jeff Derman (212-508-1625; jeff.derman@solomonpartners.com), Tero Jänne (212-508-1676; tero.janne@solomonpartners.com), and Dan Golynskiy (646-378-4068; daniel. golynskiy@solomonpartners.com).**

PLEASE TAKE FURTHER NOTICE that the deadline to submit a bid for any Assets is **May 17, 2024, at 5:00 p.m. (E.T.)**.

PLEASE TAKE FURTHER NOTICE that an auction for the Assets, unless cancelled or adjourned in accordance with the Bidding Procedures Order, will be held on **May 21, 2024 at 11:00 a.m. (E.T.)**, at the offices of Ropes & Gray LLP, 1211 6th Avenue, New York, NY 10036, or virtually via telephone and/or video conference pursuant to information to be timely provided by the Debtors to the Auction Participants.

PLEASE TAKE FURTHER NOTICE that unless adjourned in accordance with the Bidding Procedures Order, the Bankruptcy Court will conduct a hearing (the "Sale Hearing") to consider the Sale on **May 23, 2024 at 2:30 p.m. (E.T.)**, subject to the Bankruptcy Court's availability.

PLEASE TAKE FURTHER NOTICE that any objections to the Sale or the relief requested in connection with the Sale, including any objection to the sale of any Purchased Assets free and clear of liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code, the identity of the Stalking Horse Purchaser, or the adequate assurance of future performance by the Stalking Horse Purchaser but not including objections related to cure amounts for the Purchased Contracts or general objections to the assumption and assignment of the Purchased Contracts (each, a "Sale Objection") must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) set forth the specific basis for the Sale Objection; (d) be filed with the Court at 824 N. Market Street, 3rd Floor, Wilmington, Delaware 19801 (the "Clerk"), and proof of service of such Sale Objection upon the Objection Notice Parties shall be filed on the Court when and where required by the Local Rules; and (e) be served upon the Objection Notice Parties. Sale Objections must be filed with the Clerk **on or before 4:00 p.m. (E.T.) on May 20, 2024** (the "Sale Objection Deadline").

PLEASE TAKE FURTHER NOTICE that any Sale Objections or objections to relief requested in connection with the conduct of the Sale, the identity of a Successful Bidder that is not the Stalking Horse Purchaser, the Sale to a Successful Bidder that is not the Stalking Horse Purchaser, as applicable, must be filed with the Clerk **on or before 2:30 p.m. (E.T.) on May 23, 2024** (the "Alternative Sale Objection Deadline"); provided that any objections to the adequate assurance of future performance by a Successful Bidder that is not the Stalking Horse Purchaser need not be written and filed and may be raised at the Sale Hearing.

PLEASE TAKE FURTHER NOTICE that any Assignment Objections, (a) in the event the Stalking Horse Purchaser is the Successful Bidder, must be filed with the Clerk by the Sale Objection Deadline and, (b) in the event the Successful Bidder is not the Stalking Horse Purchaser, need not be written and filed and may be raised at the Sale Hearing.

The "Objection Notice Parties" are as follows: (a) proposed counsel to the Debtors, Ropes & Gray LLP, 1211 Avenue of the Americas, New York, NY 10036 (Attn: Gregg M. Galardi, Cristine Pirro Schwarzman, and Ellen Wheeler; email: gregg.galardi@ropesgray.com, cristine.schwarzman@ropesgray.com, and ellen.wheeler@ropesgray.com); Ropes & Gray LLP, 191 North Wacker Drive, 32nd Floor, Chicago, IL 60606 (Attn:

Conor P. McNamara, email: conor.mcnamara@ropesgray.com); and Chipman Brown Cicero & Cole, LLP (Attn: Mark L. Desgrosseilliers; email: desgross@chipmanbrown.com); (b) the U.S. Trustee, 844 N. King Street, Room 2207, Wilmington, Delaware 19801 (Attn: Linda Casey and Fang Bu, email: Linda.Casey@usdoj.gov and Fang.Bu@usdoj.gov); (c) counsel to Antares Capital LP, as DIP Agent and the Prepetition Initial First Lien Agent, King & Spalding LLP (Attn: Lindsey Henrikson and Matthew Warren, email: lhenrikson@kslaw.com and mwarren@kslaw.com); and (d) counsel for any statutory committee appointed in these chapter 11 cases.

**PLEASE TAKE FURTHER NOTICE THAT FAILURE TO ABIDE BY THE BIDDING PROCEDURES, THE BIDDING PROCEDURES ORDER OR ANY OTHER APPLICABLE ORDER OF THE COURT ENTERED IN THESE CHAPTER 11 CASES MAY RESULT IN THE REJECTION OF YOUR BID AND YOUR DISQUALIFICATION FROM PARTICIPATING IN THE BIDDING FOR AND AUCTION OF ANY OF THE DEBTORS' ASSETS.**

**PLEASE TAKE FURTHER NOTICE THAT IF A SALE OBJECTION IS NOT FILED AND SERVED ON OR BEFORE THE APPLICABLE SALE OBJECTION DEADLINE IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER, THE OBJECTING PARTY MAY BE BARRED FROM OBJECTING TO THE SALE AND BEING HEARD AT THE SALE HEARING, AND THE BANKRUPTCY COURT MAY ENTER THE SALE ORDER WITHOUT FURTHER NOTICE TO SUCH PARTY.**

**PLEASE TAKE FURTHER NOTICE THAT SECTION 10.18 OF THE STALKING HORSE APA INCLUDES THE FOLLOWING RELEASES:**

(a) Effective as of the Closing and subject to entry of the Sale Order (with any discrepancy between the release provided in the Sale Order and this Agreement being controlled by this Agreement), each of the Sellers on their own behalf and on behalf of their past, present, and future predecessors, successors and assigns hereby unconditionally, irrevocably, and fully forever release, remise, acquit, relinquish, irrevocably waive, and discharge, in their capacity as purchaser of the Purchased Assets, the Buyer, the Administrative Agents and the Lenders, and each of their predecessors, successors, assigns, Subsidiaries and Affiliates, and each of their respective former, current or future, direct or indirect, equity holders, officers, employees, directors, agents, advisory board members, representatives, owners, members, partners, employees, management companies, direct and indirect parent entities, "controlling persons" (within the meaning of federal securities law), heirs, administrators and executors, financial advisors, legal advisors, shareholders, managers, principals, consultants, accountants, attorneys, assuers, investment bankers and other professionals in each case acting in such capacity whether current or former, including in their capacity as directors of the Company, as applicable (collectively, the "Sellers Released Persons"), of and from any and all Claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, accounts, defenses, offsets, powers, privileges, licenses, Liens, indemnities, guaranties, franchises, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, foreseen or unforeseen, accrued, unaccrued, fixed, contingent, pending, or threatened, including all legal and equitable theories of recovery, arising under common-law, statute, or regulation by contract or otherwise, including any derivative claims asserted or assertable on behalf of any of the Sellers, each Sellers Released Persons and Buyer Released Persons, of every nature and description that exist on the date hereof or that such Person would have been legally entitled to assert (whether individually or collectively) with respect to, based on or relating to, or in any manner arising from, in whole or in part, the Sellers, Acquired Entities or the Business (including the capital structure, management, ownership or operation thereof), the business operations of the Sellers, the subject matter of, or the transaction or contractual arrangements between or among any Sellers Released Persons or Buyer Released Persons, the Sellers' restructuring efforts, the ownership or operation of the Sellers by any Sellers Released Persons, the distribution of any cash or other property of the Sellers in obligations under this Agreement, the Sale or the other Transaction Documents. Nothing in this Section 10.18(a) shall limit Sellers' or in- or out-of-court restructuring efforts, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to claims asserted against the Sellers), intercompany transactions, the restructuring transactions and the Transactions, entry into the Bankruptcy Cases, the formulation, preparation, dissemination, negotiation, entry into, or filing of, as applicable, any term sheets, any restructuring support agreement, the DIP Documents, this Agreement, the Transaction Documents or any other documents created or entered into in connection with the Transaction, this Agreement or the Closing; provided that nothing herein shall release the Sellers of their obligations under this Agreement, the Sale Order, and the other Transaction Documents. Nothing in this Section 10.18(b) shall limit Buyer's rights in the case of Actual Fraud (but not, for the avoidance of doubt, fraudulent conveyance claims). Effective as of the Closing, each of the Buyer and the Administrative Agents, on its own behalf and on behalf of its past, present, and future Affiliates (including the Lenders), predecessors, successors and assigns, covenants not to sue any Seller or any Sellers Released Person, or to instigate, initiate, or pursue against any of them, in any manner of judicial or administrative proceeding on such Buyer's or Administrative Agent's own behalf or on behalf of any of the Buyer Released Persons, or any other Person, regarding or in connection with any of the claims released pursuant to this Section 10.18(b).

(c) Without limiting in any way the scope of the releases contained in this Section 10.18 and effective upon the Closing, each of Seller, Buyer and the Administrative Agents, to the fullest extent allowed under applicable Law, hereby waives and relinquishes all statutory and common law protections purporting to limit the scope or effect of a general release, whether due to lack of knowledge of any claim or otherwise, including, waiving and relinquishing the terms of any Law which provides that a release may not apply to material unknown Claims. Each of Seller, Buyer and the Administrative Agents hereby affirms its intent to waive and relinquish such unknown Claims and to waive and relinquish any statutory or common law protection available in any applicable jurisdiction with respect thereto. Each of Seller, Buyer and the Administrative Agents hereby represents and warrants that it has access to adequate information regarding the terms hereof, the scope and effect of the releases contained in this Section 10.18, and all other matters encompassed by this Agreement to make an informed and knowledgeable decision with regard to entering into this Agreement.

Dated: April 30, 2024, Wilmington, Delaware, **CHIPMAN BROWN CICERO & COLE, LLP**, /s/ *Mark L. Desgrosseilliers*    , Mark L. Desgrosseilliers (No. 4083), Hercules Plaza, 1313 North Market Street, Suite 5400, Wilmington, Delaware 19801, Telephone: (302) 295-0192, Email: desgross@chipmanbrown.com -and- **ROPES & GRAY LLP**, Gregg M. Galardi (No. 2991), Cristine Pirro Schwarzman (admitted *pro hac vice*), 1211 Avenue of the Americas, New York, New York 10036, Telephone: (212) 596-9000, Facsimile: (212) 596-9090, E-mail: gregg.galardi@ropesgray.com, cristine.schwarzman@ropesgray.com -and- **ROPES & GRAY LLP**, Conor P. McNamara (admitted *pro hac vice*), 191 North Wacker Drive, 32nd Floor, Chicago, Illinois 60606, Telephone: (312) 845-1200, Facsimile: (312) 845-5500, E-mail: conor.mcnamara@ropesgray.com, *Proposed Counsel to the Debtors and Debtors in Possession*

¹ The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Never Slip Holdings, Inc. (5010); Never Slip TopCo, Inc. (8956); SHO Holding I Corporation (7699); SHO Holding II Corporation (7738); Shoes For Crews, Inc. (9679); SFC Holdings, Inc. (8908); SFC Holdings, LLC (2357); Shoes for Crews, LLC (2362); SRS/MKS, L.L.C. (7003); Shoes for Crews Canada, Ltd. (0085); SFC Canada, Inc. (1314); and Sunrise Enterprises, LLC (4516). The Debtors' address is 5000 T-Rex Avenue, Suite 100, Boca Raton, FL 33431.

² Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Bidding Procedures Order and Bidding Procedures (each as defined below).