**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) **Chapter 11** |
| | ) |
| | ) **Case No. 24-10663 (LSS)** |
| **NEVER SLIP HOLDINGS, INC. et. al.,** | ) |
| | ) **(Jointly Administered)** |
| | ) |
| Debtors. | ) **Sale Hearing: May 23, 2024 at 2:30 PM** |
| | ) **Sale Objection Date: May 20, 2024, 2024** |
| | ) **Cure Objection Date: May 22, 2024 at Noon** |
| | ) |
| | ) **Docket Nos. 132 and 154** |

**ORACLE'S LIMITED OBJECTION TO AND RESERVATION OF RIGHTS**
**REGARDING DEBTORS' SALE MOTION AND ASSUMPTION NOTICE**

Oracle Credit Corporation and Oracle America, Inc., successor in interest to NetSuite, Inc. (jointly, "Oracle"), a creditor and contract counter-party in the above-captioned Chapter 11 case, submits this limited objection and reservation of rights ("Rights Reservation") regarding (1) *Debtors' Motion Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code For Entry of an Order (I)(A) Approving the Bidding Procedures, Including the Debtors' Entry Into the Stalking Horse APA, the Sale Timeline, and the Form and Manner of Notice Thereof, and (B) Approving the Deadline or Parties in Interest to Provide Notice of Their Intention To Use the Challenge Period to Investigate the Liens and Claims of the Prepetition First Lien Secured Lenders Seeking To Credit Bid at the Auction; (II) Approving the Debtors' (A) Sale of All or Substantially All of the Debtors' Assets Free and Clear of All Liens Other Than Assumed Liabilities and (B) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases to the Successful Bidder; and (III) Granting Related Relief* [Dkt. No. 70] ("Sale Motion") and (2) *Notice of Possible Assumption and Assignment With Respect to Executory Contracts and Unexpired Leases of the Debtors* [Dkt. No. 154] ("Assumption Notice"), both filed by Never Slip Holdings, Inc., *et al.* ("Debtors").

## I.    <u>INTRODUCTION</u>

1.      In connection with the Sale Motion, the Debtors seek Bankruptcy Court authority to, among other things, assume and assign certain executory contracts between the Debtors and Oracle.

2.      Oracle objects to, and reserves its rights regarding, the proposed assumption and assignment for several reasons.

a)      First, the targeted Oracle agreements are, or pertain to, one or more licenses of intellectual property that are not assignable absent Oracle's consent, pursuant to both the underlying license agreement and applicable law.

b)      Second, the Assumption Notice does not provide a complete description of the contracts to be assumed and assigned. As a result, Oracle is unable to determine the accuracy of the proposed cure amount.

c)      Third, at present, no adequate assurance information has been provided for the Stalking Horse Bidder[1] and the Stalking Horse Bidder may not be the ultimate purchaser/assignee.   Therefore, Oracle is unable to determine whether the successful bidder will be capable of performing under the terms of the contracts the Debtors seek to assume and assign.  Until the ultimate purchaser is known, Oracle reserves its rights on this point.

d)      Finally, the APA (defined below) may contemplate the unauthorized shared use of Oracle's licenses, in a manner which is not permitted by Oracle's agreements.  Oracle objects to any unauthorized shared use of its licenses.

3.      Accordingly, Oracle requests that the Court deny the Debtors' request for authority to assume and assign, transfer, or share use of, any Oracle agreement without Oracle's consent.

## II.    <u>FACTUAL BACKGROUND</u>

4.      The Debtors filed the above captioned case on April 1, 2024 and an order directing joint administration was entered shortly thereafter. The Debtors continue to operate as debtors in possession.

---

[1] Capitalized terms not defined herein shall have meanings set forth in the Sale Motion.

5.      On April 8, 2024, the Debtors filed the Sale Motion, by which the Debtors seek Court authority to sell all or substantially all of the Debtors' assets.

6.      On May 3, 2024, the Debtors filed the Assumption Notice, which identifies two Oracle agreements ("Oracle Agreements"), as follows:

| Counterparty | Description | Debtor Entity | Executory Date | Estimated Cure Amount |
|---|---|---|---|---|
| Oracle America, Inc. | Subscription Services Agreement between Oracle America, Inc. and Shoes For Crews, LLC | Shoes For Crews, LLC | 2/28/2020 | $0.00 |
| NetSuite Oracle Banc of America Leasing[2] | Subscription Services Agreement between Oracle America, Inc. and Shoes For Crews, LLC | Shoes For Crews, LLC | 3/1/24 | $93,685.73 |

7.      The Asset Purchase Agreement between the Debtors and the Stalking Horse Bidder ("APA") is attached as Exhibit "B" to the Sale Motion. Section 6.3(b) of the APA contemplates certain information sharing between the Debtors and the Stalking Horse Bidder, as follows:

> From and after the Closing Date until the later of the conclusion of the Bankruptcy Cases and the wind-down and final distribution of all assets of the Sellers, Buyer shall give the Sellers and the Sellers' Representatives reasonable access during normal business hours to the books and records pertaining to the Purchased Assets and Assumed Liabilities and certain key employees, for the purposes of (i) the preparation or amendment of Tax Returns, (ii) the determination of any matter relating to the rights or obligations of the Sellers under this Agreement, or (iii) as is necessary to administer, or satisfy their obligations in connection with, the Bankruptcy Cases and the wind-down of the Sellers and their assets. Buyer shall, and shall cause each of its controlled Affiliates to, cooperate with the Sellers as may reasonably be requested by the Sellers for such purposes.

APA §6.3(b).

8.      It is not clear from the APA which programs are needed by the Debtors during the post-closing period and, therefore, Oracle is unable to evaluate whether Section 6.3(b) of the APA

---

[2] The NetSuite Oracle Banc of America Leasing contract has been reassigned to Oracle Credit Corporation.

purports to authorize the shared use of Oracle's agreements in a manner that is not permitted by the relevant license grant.

## III.    ARGUMENT

### A.    The Debtors May Not Assume And Assign Oracle's Agreements Absent Oracle's Consent Because They Pertain To Licenses Of Intellectual Property.

9.      Section 365(c) of the Bankruptcy Code provides, in relevant part:

> The trustee may not assume or assign any executory contract ... of the debtor ... if (1)(A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor ..., whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and (B) such party does not consent to such assumption or assignment.

10.     Federal law makes non-exclusive patent licenses non-assignable absent consent of the licensor.  *See In re Catapult Entertainment, Inc.*, 165 F.3d 747 (9th Cir. 1999), *cert. dismissed*, 528 U.S. 924 (1999) (patent law renders non-exclusive patent licenses personal and non-assignable under Bankruptcy Code § 365(c)(1)); *In re Sunterra Corp.*, 361 F.3d 257, 271 (4th Cir. 2004) (holding that a debtor was statutorily barred by § 365(c)(1) from assuming a computer software license where contract counterparty did not consent to the assumption); *In re: West Elec., Inc.) 852 F. 2d 79 (3d Cir. 1988)* (holding that the "provision limiting assumption of contracts is applicable to any contract subject to a legal prohibition against assignment.")*, In re Trump Entm't Resorts, Inc.*, 526 B.R. 116, 126 (Bankr. D. Del. 2015) ("Non-exclusive patent and copyright licenses create only personal and not property rights in the licensed intellectual property and so are not assignable."); *In re Rupari Holding Corp.*, 573 B.R. 111, 119 (Bankr. D. Del. 2017) (holding that the debtor could not assume and assign a trademark license without the consent of the non-debtor licensor).

11.    Oracle's agreements are, or pertain to, non-exclusive licenses of copyrighted software.

12.    Therefore, pursuant to Bankruptcy Code section 365, the Debtors may not assume and assign any Oracle Agreement without Oracle's consent.

13.    For the reasons discussed herein, Oracle does not consent to the Debtors' proposed assumption and assignment at this time.

**B.    The Debtors Have Not Adequately Identified The Oracle Agreements To Be Assumed and Assigned.**

14.    The Assumption Notice does not provide sufficient information for Oracle to determine the precise contracts that are at issue.

15.    Without more specific information, Oracle cannot determine whether it is evaluating the same agreements the Debtors seek to assume and assign.

16.    In addition, the Assumption Notice does not identify any underlying support renewals or Estimates associated with the "Subscription Services Agreement" described on the Assumption Notice. Because the support agreements and master agreements relate to the underlying license agreements as part of substantially the same transaction, they constitute integrated contracts which may not be separately assumed and assigned – if that is the Debtors' intent.  *See, e.g., In re Interstate Bakeries Corporation*, 751 F.3d 955, 961-2 (8th Cir. 2014); *In re Buffets Holdings*, 387 B.R. 115 (Bankr. D. Del. 2008).

17.    An executory contract must be assumed in its entirety and "[c]orrespondingly, all of the contracts that comprise an integrated agreement must either be assumed or rejected, since they all make up one contract."  *In re Taylor-Wharton Int'l LLC*, 2010 WL 4862723, at *3 (Bankr. D. Del. Nov. 23, 2010) (citing *In re Exide Tech.*, 340 B.R. 222, 228 (Bankr. D. Del. 2006)). Under

California law,[3] made applicable by the Oracle Agreements, "[s]everal contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together." Cal. Civ. Code § 1642.

18.     To clarify the Oracle contracts the Debtors hope to assume and assign, Oracle requests that the Debtors specify the targeted contracts' (a) contract or identification number; (b) date; (c) associated support renewals or Estimates; and (d) governing license agreement, if not already identified.

19.     This information will enable Oracle to evaluate whether the Oracle Agreements are assignable, supported, expired, or in default, and, if in payment default, the appropriate cure amount.

20.     Additionally, the information will allow Oracle to assess whether Oracle may accept performance from an entity other than the Debtors.

21.     Oracle reserves its right to be heard on this issue until after the Oracle Agreements the Debtors seek to assume and assign are identified with greater specificity.

### C.     The Debtors May Not Have Provided The Correct Cure Amount.

22.     Before assuming and assigning any executory contract, the Debtors must cure (or provide adequate assurance of a prompt cure of) any default under the subject contracts. 11 U.S.C. § 365(b)(1).

23.     The Debtors have identified a cure amount of $93,685.73 for one of the Oracle Agreements.

---

[3] *In re Hawker Beechcraft, Inc.*, No. 12-11873 (SMB), 2013 WL 2663193, at *3 (Bankr. S.D.N.Y. June 13, 2013) ("State law governs the question whether an agreement is divisible or indivisible for the purposes of assumption and rejection under Bankruptcy Code § 365.")

24.     However, because the Debtors failed to provide a complete description of the contracts they seek to assume and assign, Oracle is unable to determine whether the stated cure amount is accurate.

25.     Oracle needs more information about the Oracle agreements that may be assumed and assigned in order to confirm the correct cure amount.

26.     Oracle reserves its right to be heard further regarding the cure until after the contracts the Debtors seek to assume and assign are identified with enough specificity to allow Oracle to determine the corresponding cure amount.

### D.     The Debtors Have Not Provided Adequate Assurance of Future Performance By the Assignee.

27.     Before assuming and assigning any executory contract, the Debtors must provide adequate assurance of future performance. 11 U.S.C. § 365(b)(1).

28.     As of the date of this Rights Reservation, no adequate assurance information regarding the Stalking Horse Bidder has been provided and the sale is subject to overbid.

29.     To satisfy Bankruptcy Code section 365(b), Oracle requests that the Debtors provide the following information about the ultimate purchaser and/or the proposed assignee: (a) financial bona fides; (b) confirmation that the purchaser is not an Oracle competitor; and (c) confirmation that the ultimate assignee will (i) execute an Oracle Assignment Agreement and related documentation which identifies with specificity the Oracle executory contract(s) to be assigned; and, if appropriate (ii) enter into an Oracle Master License Agreement.

30.     Absent these assurances, Oracle cannot determine the proposed assignee's creditworthiness, its suitability as an Oracle customer, or its ability to adequately perform under the terms of the Oracle Agreements.

31.     Until the information described above is provided, the Debtors have not complied with the requirements of section 365(b)(1)(C).

###### E.    The Oracle Agreements Do Not Authorize Simultaneous Use By The Debtors and the Eventual Purchaser.

32.    The APA contemplates that certain services will be provided by the eventual purchaser to the Debtors. Precise information about the nature of these proposed shared services is not provided.

33.    This omission precludes Oracle from determining how, or if, its contracts will be affected. Simultaneous use of, and access to, Oracle's licensed software exceeds the scope of the permitted uses under the Oracle Agreements, and potentially would result in an unauthorized "splitting" of the licenses between the Debtors and the ultimate purchaser.

34.    Oracle objects to the extent that any shared use arrangement purports to grant to both the Debtors and purchaser the right to share use of the Oracle licenses beyond the licenses' respective terms.

35.    Oracle reserves all rights regarding any shared use, including any subsequent asset purchase agreement which proposes to include shared use and which involves an as yet unknown buyer.

## IV.  **CONCLUSION**

36.    For the reasons set forth above, Oracle respectfully requests that the Court deny the

Debtors' request for authority to assume and assign, and to share use of the Oracle Agreements.

Oracle reserves its right to be heard further on all issues set forth herein..

Dated: May 20, 2024
Wilmington, Delaware

**MARGOLIS EDELSTEIN**

By:          /s/ James E. Huggett
          James E. Huggett, Esq. (#3956)
300 Delaware Avenue, Suite 800
Wilmington, Delaware 19801
Telephone:    (302) 888-1112
E-mail:        jhuggett@margolisedelstein.com

Amish R. Doshi, Esq.
**DOSHI LEGAL GROUP, P.C.**
1979 Marcus Avenue, Suite 210E
Lake Success, NY 11042
Tel: (516) 622-2335
E-Mail: amish@doshilegal.com

Shawn M. Christianson, Esq.
Valerie Bantner Peo, Esq.
**BUCHALTER, A PROFESSIONAL
CORPORATION**
425 Market Street, Suite 2900
San Francisco, California 94105-2491
Tel: (415) 227-0900

Peggy Bruggman, Esq.
Benjamin Wheeler, Esq.
**ORACLE AMERICA, INC.**
500 Oracle Parkway
Redwood City, California 94065

**Attorneys for Oracle America, Inc.**