**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Never Slip Holdings, Inc., *et al.*,[1] | Case No. 24-10663 (LSS) |
| Debtors. | (Jointly Administered) |
| | **Re D.I.s: 70, 132, and 154** |

### COLE HAAN INTERNATIONAL B.V.'s RESERVATION OF RIGHTS REGARDING NOTICE OF POSSIBLE ASSUMPTION AND ASSIGNMENT WITH RESPECT TO EXECUTORY CONTRACTS AND UNEXPIRED LEASES OF THE DEBTORS

Cole Haan International B.V. ("Cole Haan"), by and through its undersigned counsel, Benesch, Friedlander, Coplan and Aronoff LLP, hereby reserves (this "Reservation") all of its rights regarding the *Notice of Possible Assumption and Assignment with Respect to Executory Contracts and Unexpired Leases of the Debtors* [D.I. 154] (the "Assumption and Cure Notice"). In support of this Reservation, Cole Haan states as follows:

### BACKGROUND

**A.      The Bankruptcy Cases**

1.      On April 1, 2024 (the "Petition Date"), the above-captioned debtors and debtors in possession (collectively, the "Debtors") commenced these chapter 11 cases (the "Bankruptcy Cases") when each Debtor filed a petition for relief under the Bankruptcy Code.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Never Slip Holdings, Inc. (5010); Never Slip TopCo, Inc. (8956); SHO Holding I Corporation (7699); SHO Holding II Corporation (7738); Shoes For Crews, Inc. (9679); SFC Holdings, Inc. (8908); SFC Holdings, LLC (2357); Shoes for Crews, LLC (2362); SRS/MKS, L.L.C. (7003); Shoes for Crews Canada, Ltd. (0085); SFC Canada, Inc. (1314); and Sunrise Enterprises, LLC (4516). The Debtors' service address is 5000 Trex Avenue, Suite 100, Boca Raton, FL 33431.

2.     The Debtors continue to operate their business and manage their properties as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

3.     On April 8, 2024, the Debtors filed their *Motion Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code for Entry of an Order (I)(A) Approving the Bidding Procedures, Including the Debtors Entry Into the Stalking Horse APA, the Sale Timeline, and the Form and Manner of Notice Thereof, and (B) Approving the Deadline for Parties in Interest to Provide Notice of Their Intention to Use the Challenge Period to Investigate the Liens and Claims of the Prepetition First Lien Secured Lenders Seeking to Credit Bid at the Auction; (II) Approving the Debtors (A) Sale of All or Substantially All of the Debtors Assets Free and Clear of All Liens Other Than Assumed Liabilities and (B) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases to the Successful Bidder; and (III) Granting Related Relief* [D.I. 70] (the "Sale Motion"), seeking, among other things, approval of certain bidding procedures to govern the sale of all or substantially all of the Debtors' assets (the "Assets") pursuant to Section 363 of the Bankruptcy Code and, in connection therewith, establishing procedures for the assumption and assignment of executory contracts and unexpired leases.

4.     On April 26, 2024, the Court entered the *Order (I)(A) Approving Certain Bidding Procedures And The Form And Manner Of Notice Thereof, (B) Approving The Debtors Entry Into The Stalking Horse APA, (C) Approving The Form And Manner Of Notice Of The Sale Hearing; And (II) Granting Related Relief* [D.I. 132] (the "Bid Procedures Order"),[2] by which the Court approved the sale procedure proposed by the Sale Motion, with certain modifications. Among other things, the Bid Procedures Order approved the Debtors' designation of SFC Acquisition Co, LLC (an entity formed and controlled by the Debtors' Prepetition First Lien Agent and

---

[2] Capitalized terms used but not defined herein have the meanings given in the Bidding Procedures Order.

Prepetition First Lien Lenders) as the Stalking Horse Purchaser for the Assets, subject to the potential identification of an alternative Successful Bidder under the procedures contained in the Bid Procedures Order.

5.      On May 3, 2024, the Debtors filed the Assumption and Cure Notice.  Among other things, the Assumption and Cure Notice designated the Collaboration Agreement, as defined below, as a Purchased Contract to potentially be assumed by the Debtors and assigned to a Successful Bidder and proposed $0.00 as the amount required to cure the Debtors' then existing monetary defaults under the Collaboration Agreement.

**B.      The Collaboration Agreement**

6.      Prior to the Petition Date, Cole Haan and one of the Debtors, Shoes for Crews, LLC ("SfC"), entered into that certain Reseller and Collaboration Agreement dated as of November 1, 2019 (the "Collaboration Agreement").   A true and correct copy of the Collaboration Agreement is annexed hereto as **Exhibit A** and incorporated herein by reference in its entirety.  The initial term of the Collaboration Agreement expired on December 31, 2021 (*see* Ex. B at § 2.1), however, in accordance with Section 2.2 of the Collaboration Agreement, the Collaboration Agreement's term has continued since such date on a year-to-year basis.  *See id.*, at § 2.2.

7.      Under the Collaboration Agreement, in general and subject to the express terms contained therein, Cole Haan and SfC agreed to jointly develop a shoe product (the "Product") that combines the Existing Styles developed by Cole Haan with the Slip-Resistant Outsole Component developed by the Debtors.  *See*, *generally*, Ex. B, at §§ 1.12 and 4.1. The Collaboration Agreement provides that the Product, including the attachment of the SfC developed Slip-Resistant Outsole Component, will be manufactured by Cole Haan's affiliated third-party manufacturers.  *See* Ex. B, at § 4.3.

8.      The Collaboration Agreement also grants (i) to SfC a non-exclusive license of Cole Haan's Trademarks and other IP Rights, and (ii) to Cole Hahn a non-exclusive license of SfC's IP Rights.  *See* Ex. B, at § 3.2.  Each license granted under the Collaboration Agreement is expressly limited to the sales and manufacturing of the Product.  *Id.*

9.      The Collaboration Agreement imposes upon SfC an obligation to distribute the Product via an expressly Approved Channel (such as SfC's website, its catalogues, and its brick-and-mortar locations), *see* Ex. B, at § 5.2, and it requires that SfC use "commercially reasonable best efforts to safeguard the prestige and goodwill represented by the Trademarks, the IP Rights and image associated therewith at the same level as heretofore maintained by Cole Haan International and its Affiliates."  *Id.*  In addition, the Collaboration Agreement contains a number of other material obligations of SfC that must be assumed and assigned to any successful bidder in their entirety.  *See, generally, Id*.

10.     As of the Petition Date, SfC does not owe Cole Hahn any funds on account of manufactured Product that is in the possession of SfC.[3]

## RESERVATION OF RIGHTS

11.     Cole Haan hereby reserves all of its rights with respect to the proposed assumption and assignment of the Collaboration Agreement including, without limitation, the following: (a) all material, non-monetary obligations under the Collaboration Agreement must be assumed by the Debtors and assigned to any successful bidder; (b) the license of Cole Haan's intellectual property rights under the Collaboration Agreement cannot be assigned without Cole Haan's

---

[3] In addition to the issues outlined in this Reservation, the Debtors and Cole Haan have engaged in good faith negotiations to resolve certain adequate protection disputes under the Collaboration Agreement and continued performance of the parties' respective obligations thereunder on a post-Petition Date basis.  As of filing this Reservation, Cole Haan believes that the parties have reached an amicable resolution.  Out of an abundance of caution, however, Cole Haan reserves all rights including, but not limited to, rights with respect to adequate protection under 11 U.S.C. § 363.

express consent; and (c) adequate assurance of future performance under the Collaboration
Agreement.

A.    **The Collaboration Agreement Includes Material Non-Monetary Obligations, Which
Must be Assumed by the Debtor and Assigned to Any Assignee in Full**

12.    Section 365(b)(1) allows a debtor to assume and assign a lease or executory contract
only if all defaults are cured, or adequate assurance of such cure is provided. 11 U.S.C. § 365; *see
also In re Crown Books Corp.*, 269 B.R. 12, 15 (Bankr. D. Del. 2001); *Pieco, Inc. v. Atl. Comput.
Sys. (In re Atl. Comput. Sys.)*, 173 B.R. 844, 857 (S.D.N.Y. 1994).

13.    While the amount of $0.00 proposed by the Assumption and Cure Notice as the
amount required to cure the Debtors' existing monetary defaults under the Collaboration
Agreement is presently accurate,[4] there are other material, non-monetary obligations of SfC and
provisions of the Collaboration Agreement that Cole Haan does not waive and to which it demands
strict adherence.

14.    It is axiomatic if the Debtor assumes (and subsequently assigns) a contract, such as
the Collaboration Agreement, it must do so *cum onere*, with all the burdens as well as the benefits.
*See Cinicola v. Scharffenberger*, 248 F.3d 110, 119-20 (3d Cir. 2001); *In re CellNet Data Sys.*,
327 F.3d 242, 249 (3d Cir. 2003) ("Under the Bankruptcy Code, a trustee may elect to reject or
assume its obligations under an executory contract. This election is an all-or-nothing proposition-
either the whole contract is assumed or the entire contract is rejected.").  "A debtor cannot simply
retain the favorable and excise the burdensome provisions of an agreement." *In re Kopel*, 232 B.R.
57, 63-64 (Bankr. E.D.N.Y. 1999).

---

[4] Cole Haan notes that there are potentially significant contingent or unliquidated claims that may arise under the
Collaboration Agreement or otherwise and reserves the right to amend this amount of its claim in connection with,
among other things, the ongoing sale process and the assumption and assignment of the Collaboration Agreement in
any Sale, and the filing of any proof or proofs of claim in these Bankruptcy Cases.

15.    In other words, obligations and burdens may not be "cherry picked." *See In re Taylor*, 913 F.2d 102, 106-07 (3d Cir. 1990) ("[T]he 'assume' or 'reject' dichotomy means simply that if the trustee wishes to obtain for the estate the future benefits of the executory portion of the contract, the trustee must also assume the burdens of that contract . . ."); *In re Italian Cook Oil Corp.*, 190 F.2d 994, 997 (3d Cir. 1951) ("The trustee, however, may not blow hot and cold. If he accepts the contract he accepts it *cum onere*. If he receives the benefits[,] he must adopt the burdens."). Thus, any order approving a proposed Sale should expressly condition assumption and assignment of the Collaboration Agreement on any Successful Bidder assuming on all obligations thereunder.

16.    Thus, Cole Haan reserves all rights regarding the proposed cure amount, the Assumption and Cure Notice, and the Sale Motion to the extent that it that it might be interpreted as cutting off any future contractual performance obligations that must be assumed with the Collaboration Agreement.

**B.    The License of Cole Haan's Intellectual Property Cannot be Assigned Without Express Consent**

17.    The Collaboration Agreement includes a grant by Cole Haan to SfC of a non-excusive intellectual property license that may not be assumed or assigned without Cole Haan's express consent.

18.    Section 365(c) of the Bankruptcy Code provides, in pertinent part, that a debtor in possession may not assume or assign an executory contract where:

> (1)(A) applicable law excuses a party, other than the debtor, to such Agreement . . . from accepting performance from or rendering performance to an entity other than the debtor or the debtor in possession, whether or not such Agreement . . . prohibits or restricts assignment of rights or delegation of duties; and (B) such party does not consent to such assumption or assignment . . . .

11 U.S.C. §365(c)(1).  In other words, if an agreement "is of a type that could not be assigned under applicable law, it may not be assumed or assigned by a trustee or debtor in possession." 3 COLLIER ON BANKRUPTCY ¶ 365.06[1] (Richard Levin and Henry J. Sommer eds., 16th ed.).

19.    The Collaboration Agreement includes a broad, non-exclusive license to SfC of Cole Haan's trademark, copyright, and patent rights in connection with SfC's sale of Product manufactured by Cole Haan.  Specifically, it contains non-exclusive licenses of Cole Haan's "Trademarks,"[5] and various other "IP Rights,"[6] each as defined in the Collaboration Agreement. *See* Ex. A, at § 3.2(a).

20.    It is well-established that non-exclusive intellectual property licenses are not assignable under federal law absent the licensor's consent and bankruptcy courts routinely enforce that restriction.  *See, e.g. In re Trump Entm't Resorts, Inc.*, 526 B.R. 116, 126 (Bankr. D. Del. 2015) ("Non-exclusive patent and copyright licenses create only personal and not property rights in the licensed intellectual property and so are not assignable."); *In re Rupari Holding Corp.*, 573 B.R. 111, 119 (Bankr. D. Del. 2017) (holding that the debtor could not assume and assign a trademark license without the consent of the non-debtor licensor); *In re Patient Education Media, Inc.*, 210 B.R. 237, 240 (Bankr. S.D.N.Y. 1997) ("[T]he nonexclusive license is personal to the transferee . . . and the licensee cannot assign it to a third party without the consent of the copyright owner.").

21.    Additionally, the Collaboration Agreement expressly provides that the license granted thereunder cannot be assigned without consent.  *See* Ex. A, at § 18 ("The rights granted to

---

[5] The Trademarks licensed to SfC include "all relevant COLE HAAN trademarks, trademark applications and service marks or their variations."  Ex. A, at § 1.16.

[6] The other IP Rights licensed to SfC by Cole Haan include "all intellectual and industrial property interests now or hereafter owned by [Cole Haan] or its Affiliates, other than the Trademarks, whether or not copyrightable or patentable…." Ex. A, at § 1.6.

SfC hereunder are unique and personal in nature, and neither this [Collaboration Agreement] nor the rights granted hereunder may be assigned, transferred, pledged or hypothecated by SfC without [Cole Haan]'s prior written approval.").

22.    Therefore, pursuant to Section 365 of the Bankruptcy Code, the Debtors may not assume and assign the Collaboration Agreement without Cole Haan's express consent, which right Cole Haan expressly reserves pending the results of the Auction and Sale process.

**C.    Cole Haan Must be Adequately Assured of Future Performance under the Collaboration Agreement**

23.    In connection with any proposed assignment of the Collaboration Agreement, Cole Haan must receive adequate assurance of future performance by the proposed assignee, including the Stalking Horse Purchaser or any other (as yet unidentified) Successful Bidder. *See* 11 U.S.C. §§ 365(b)(1)(C) & 365(f)(2).

24.    As outlined above, the Collaboration Agreement imposes certain performance obligations on SfC in connection with the production, delivery and distribution of Product manufactured by Cole Haan.  SfC (or its subsequent assignee) must continue to fulfill those obligations, should the Collaboration Agreement be assumed and assigned under any potential transaction.

25.    Cole Haan, however, has not yet been definitively advised as to whether any Successful Bidder intends to seek assignment of the Collaboration Agreement nor has the Auction and Sale process concluded such that, other than the proposed Stalking Horse Purchaser, Cole Haan knows the identity of any potential assignees.  Without being provided with the foregoing information, including the Adequate Assurance Information under the Bid Procedures Order, Cole Haan cannot be adequately assured that any Successful Bidder will be able to meet its obligations under the Collaboration Agreement.

26.     Therefore, Cole Haan reserves all of its rights regarding any potential assignment until it is satisfied that the Debtors' have demonstrated adequate assurance of future performance as required by Section 365(f)(2) of the Bankruptcy Code.

27.     In addition to the foregoing, Cole Hahn expressly reserves the right to amend this Objection or to make such other and further objections as may be appropriate or necessary with respect to the Sale or any potential assumption and assignment of the Collaboration Agreement, including, without limitation, any additional objections regarding the assignment of the Collaboration Agreement to a Successful Bidder once any Successful Bidder is identified.

**WHEREFORE**, for the reasons outlined above, Cole Haan hereby reserves all rights regarding the proposed cure amount, the Assumption and Cure Notice, and the Sale Motion.

Dated:    May 20, 2024
Wilmington, Delaware

**BENESCH, FRIEDLANDER,**
    **COPLAN & ARONOFF LLP**

  */s/ Daniel N. Brogan*
Michael J. Barrie (#4684)
Daniel N. Brogan (#5723)
1313 North Market Street, Suite 1201
Wilmington, Delaware 19801
Telephone: (302) 442-7010
Facsimile:  (302) 442-7012
Email:     mbarrie@beneschlaw.com
        dbrogan@beneschlaw.com

*Counsel to Cole Haan International B.V.*